UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| A.D.,<br><br>               Plaintiff,<br><br>     v.<br><br>WYNDHAM HOTELS AND RESORTS,<br>INC.,<br><br>               Defendant. | Civil No. 4:19cv120 |

## ORDER

Pending before the Court is a Motion to Dismiss brought by Defendant Wyndham Hotels and Resorts, Inc.  For the following reasons, a ruling on Defendant's Motion to Dismiss (ECF No. 14) is **DEFERRED**.

## I.     BACKGROUND

When ruling on a motion to dismiss for failure to state a claim, courts accept a complaint's well-pled factual allegations as true and draw any reasonable inferences in favor of the plaintiff. *See Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012).  The Court therefore reviews the facts as alleged by A.D. in her Complaint.

A.D. is a victim of sex trafficking.  Compl. at 16–18, ECF No. 1.  In 2012, when she was 26 years old, A.D. was going through a divorce and was struggling financially.  *Id.* at 16–17.  She accepted a job as a driver, only to discover later that she was working for an organization engaged in sex trafficking.  *Id.*  Ultimately, one member of this sex trafficking venture forced A.D. to sexually service strangers for his financial benefit.  *Id.* at 17.  She was sex trafficked for over a month. *Id.*  The trafficking of A.D. is alleged to have occurred in southeast Virginia primarily out of the

Super 8® Hampton Hotel located at 1330 Thomas Street, Hampton, Virginia 23669, and the Days

Inn® Hampton Hotel located at 1918 Coliseum Drive, Hampton, Virginia 23666.  *Id.* at 18.

On December 2, 2019, A.D. filed a Complaint against a sole Defendant, Wyndham Hotels

and Resorts, Inc. ("Wyndham").  A.D. asserts that Wyndham—as the parent brand under which

the Super8® and Days Inn® franchises exist—owns, controls, and has an agency relationship with

both the Super8® and the Days Inn® hotels at which A.D. was sex-trafficked.  *Id.* at 10–13.  She

brings the Complaint under the Trafficking Victims Protection Reauthorization Act ("TVPRA"),

18 U.S.C. § 1595(a).  *Id.* at 21–22.  A.D. asserts that Wyndham is liable under both a direct and

an agency theory of liability.  Resp. in Opp'n at 2, ECF No. 26.

Wyndham moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

Mot. to Dismiss, ECF No. 14.  Wyndham argues that Plaintiff has failed "to make well-pled alle-

gations sufficient to support any of the[] elements" of a claim under § 1595(a).  Mem. in Supp. at

4, ECF No. 15.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint.  Rule 12(b)(6) permits a defendant to seek dismissal of a complaint based on a

plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

motion to dismiss for failure to state a claim should be granted if the complaint does not allege

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that [the] defendant" is liable.  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  "Facts that are 'merely consistent with' liability do not establish a plausible

claim to relief." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013).  The "'factual allegations must be enough to raise [the] right to relief above the speculative level,' thereby 'nudging [the plaintiff's] claims across the line from conceivable to plausible.'"  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Twombly,* 550 U.S. at 555) (alterations omitted).

At this stage, as noted above, "(1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader."  5B Charles A. Wright et al., Federal Practice & Procedure § 1357 & n.11 (3d ed.) (collecting cases); *accord Wag More Dogs*, 680 F.3d at 365.   But courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  A threadbare recitation of the "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see also Iqbal*, 556 U.S. at 663 (noting that "mere conclusory statements" are insufficient).

**B.      18 U.S.C. § 1595**

Title 18 U.S.C. § 1595 provides: "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . ."  Accordingly, § 1595(a) creates civil liability for two categories of defendants: (1) those who have themselves committed a

criminal offense under § 1591 of the TVPRA (*i.e.*, perpetrator liability),[1] and (2) those who are not themselves subject to criminal liability but who knowingly benefitted from participation in a venture that they knew *or should have known* was committing an offense under § 1591 of the TVPRA (*i.e.*, beneficiary liability).[2]

Plaintiff asserts a beneficiary theory of civil liability against Wyndham. "The requirements for liability under § 1595(a) on a 'beneficiary' theory can be stated as follows: (1) the person or entity must 'knowingly benefit[], financially or by receiving anything of value,' (2) from participating in a venture, (3) that the 'person knew or should have known has engaged in an act in violation of [§ 1591].'" *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19cv1194, 2020 WL 1244192, at *5 (S.D. Ohio March 16, 2020) (quoting 18 U.S.C. § 1595(a)).

To satisfy the first element, the plaintiff must allege that the defendant "knowingly receive[d] a financial benefit . . . ." *Id.* The benefit need not be provided to the defendant specifically because of its involvement in sex trafficking. *H.H. v. G6 Hospitality, LLC*, No. 2:19cv849, 2019

---

[1]     Perpetrator liability is subdivided into two categories of perpetrators under § 1591 of the TVPRA: (1) "[w]hoever knowingly . . . recruits, entices, harbors transports, provides, obtains, advertises, maintains, patronizes, or solicits" a person "knowing . . . that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act" ("perpetrators") (18 U.S.C. § 1591(a)(1)); and (2) "[w]hoever knowingly . . . benefits . . . from participation in a venture" knowing that the venture has engaged in the § 1591(a)(1) definition of sex trafficking ("beneficiary-perpetrators"). 18 U.S.C. § 1591(a)(2). Section 1591 imposes an actual knowledge requirement on participation for criminal liability for both perpetrators and beneficiary perpetrators. *See* 18 U.S.C. § 1591(e) (defining "participation" in a venture as "knowingly assisting, supporting, or facilitating" a sex-trafficking venture), differentiating beneficiary-perpetrator criminal liability from beneficiary civil liability, which has only a constructive knowledge requirement.

[2]     Prior to 2008, the TVPRA provided only for perpetrator liability. The pre-2008 version of § 1595 provided: "An individual who is a victim of a violation of section . . . 1591 of this chapter may bring a civil action against the perpetrator . . . ." *Id.* This included, as described in note 1, beneficiary-perpetrators under § 1591(a)(2) who *actually knew* they were the beneficiary of sex trafficking. In 2008, the TVPRA was amended to add civil liability for beneficiaries who *should have known* they were benefitting from sex trafficking. 18 U.S.C. § 1595 (2008).

WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019). "The statutory language requires that [the defend-ant] knowingly benefit financially, *not* that the perpetrator compensate [the defendant] on account of the sex trafficking." *Id.* (emphasis added) (quotation omitted). "[T]he rental of a room consti-tutes a financial benefit" knowingly received "sufficient to meet this element of the § 1595(a) standard." *Doe S.W.*, 2020 WL 1244192, at *5 (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964–65 (S.D. Ohio 2019); and *H.H.*, 2019 WL 6682152, at *2).

What a plaintiff must allege to satisfy the second "participation in a venture" element of a § 1595(a) claim is less clear. Wyndham argues that "[p]articipation requires some overt act in furtherance of the trafficking; nonfeasance (*i.e.*, the alleged failure to prevent trafficking) is not sufficient." Mem. in Supp. at 6, ECF No. 15. Wyndham asserts that a "[p]laintiff must allege specific conduct that furthered the sex trafficking venture." *Id.* (quoting *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018)). The Court agrees. Under the plain language definition of the term "participate," the defendant-hotel must "take part" in the sex trafficking venture. *See Participate*, Oxford English Dictionary (3d ed. 2000).

The definition of "participation" in § 1591 is also informative. Section 1591(e) defines "participation in a venture" for purposes of criminal liability to mean "knowingly assisting, sup-porting, or facilitating" a sex-trafficking venture. 18 U.S.C. § 1591(e). The "knowingly" aspect of this definition is inapplicable to the definition of "participation" in § 1595 because it would contradict the "knew or should have known" knowledge requirement of § 1595. Nevertheless, the Court finds that the § 1591(e) definition of participation as "assisting, supporting, or facilitating" supports the conclusion that a defendant must somehow "take part" in the sex trafficking venture through some action that assists, furthers, or facilitates the sex trafficking. Accordingly, a failure to affirmatively prevent or inhibit sex trafficking does not constitute participation.

However, participation that may qualify does not need to be knowing or "direct participation in the sex trafficking." *M.A.*, 425 F. Supp. 3d at 970.  The hotel need not share a common purpose with the alleged trafficker.  *A.C. v. Red Roof Inns, Inc.*, 2020 WL 3256261, at *6 (S.D. Ohio June 16, 2020).  Such a requirement would vitiate the "should have known" language provided in the statute.  *Id.*; *see also Doe S.W.*, 2020 WL 1244192, at *6 (ruling that "'participation' under § 1595 does not require actual knowledge of participation in the sex trafficking itself").  A defendant sharing a common purpose with the trafficker to engage in sex trafficking must have actual knowledge of the sex trafficking.  Because § 1595(a) also imposes civil liability on those who should have known that the venture was engaged in sex trafficking, it follows that a defendant does not need to share a common purpose with the alleged trafficker.

With these considerations in mind, this Court follows other courts in finding that a plaintiff establishes participation in a venture for purposes of § 1595(a) when she alleges "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970; *see also A.C.*, 2020 WL 3256261, at *6 (same).  Although a hotel does not directly or knowingly participate in sex trafficking by repeatedly renting rooms to a sex trafficking venture, it nevertheless assists, furthers, and facilitates the sex trafficking activity by doing so.  Therefore, a plaintiff may sufficiently allege participation in a venture under § 1595 by alleging that the defendant repeatedly rented rooms to people it knew or should have known were using those rooms to engage in sex trafficking.  *Doe S.W.*, 2020 WL 1244192, at *7.

To satisfy the third element, a plaintiff must establish that the defendant "knew or should have known" that the venture was engaged in sex trafficking.  "[T]he plain text of § 1595(a) makes clear that the standard under this section is a negligence standard of constructive knowledge." *Id.*

6

(citing *M.A.*, 425 F. Supp. 3d at 970; and *H.H.*, 2019 WL 6682152, at *3).  Constructive knowledge is "knowledge that one using reasonable care or diligence should have," which is therefore "attributed by law to a given person." *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 175 (4th Cir. 2014) (alterations omitted) (quoting Black's Law Dictionary (9th Ed. 2009)).

## III.   ANALYSIS

### A.   Knowingly Benefit

A.D. has sufficiently alleged that the Wyndham knowingly received a benefit.  The Complaint alleges that "Wyndham receives a percentage of the gross room revenue generated by the operations of Super8® and Days Inn®, including a percentage of the revenue generated from the rate charged for the rooms in which Plaintiff was sex trafficked."  Compl. at 4, ECF No. 1.  "[T]he rental of a room constitutes a financial benefit" knowingly received as "sufficient to meet this element of the § 1595(a) standard." *Doe S.W.*, 2020 WL 1244192, at *5 (citing *M.A.*, 425 F. Supp. 3d at 964–65; and *H.H.*, No. 2019 WL 6682152, at *2).

Wyndham knowingly received this financial benefit, although the benefit was first received by the Super8® and Days Inn® hotels before being conveyed to Wyndham.  Nothing in the statute implies that the benefit must be paid directly from the sex trafficker to a defendant.  A percentage of the revenue generated from the rental of rooms is a financial benefit and Wyndham knew it was receiving this benefit.  A.D. has sufficiently alleged this element.

### B.   Participation in a Venture

Although A.D. has clearly alleged that her trafficker had a sex trafficking venture (Compl. at 2, ECF No. 1), the question presented here is whether A.D. has sufficiently alleged that Wyndham participated in that venture.  The Court finds that A.D. has sufficiently alleged this element.

A.D. alleges that Wyndham "leased rooms to A.D.'s trafficker, when [it] knew or should have known, that he was using [its] room to imprison A.D., physically assault her, and subject her to repeated exploitation as he forced her into sexual servitude." *Id.* at 19.  A.D. alleges that Wyndham rented numerous rooms to her trafficker, for various lengths of time, and that the rentals were often renewed. [3]  *Id.* at 18–19.  The repeated rental of rooms to a sex trafficking venture is sufficient to plead this participation element.  *Doe S.W.*, 2020 WL 1244192, at *7.  By allegedly repeatedly renting rooms to A.D.'s trafficker, Wyndham took part in, furthered, and facilitated the sex trafficking venture, even if Wyndham did not rent rooms to the trafficker with that intent.

Wyndham argues that it cannot have participated in a sex trafficking venture because it is merely a franchisor of the Super8® and Days Inn® hotels at which A.D. was trafficked, and that Wyndham is uninvolved in the daily operations of those hotels.  Resp. in Opp'n at 2, 6–7, ECF No. 15; Reply at 5, ECF No. 30.  This objection is dismissed at this time.  At this Motion to Dismiss stage, the Court accepts the Plaintiff's factual allegations as true and draw all inferences in Plaintiff's favor.  *See Wag More Dogs*, 680 F.3d at 365.  Plaintiff has alleged that Wyndham leased rooms to A.D.'s trafficker.  Compl. at 19, ECF No. 1.  Whether Wyndham was in fact involved sufficiently with room leasing is a question of fact to be discovered.

However, the Court declines to find that hotels participate in a sex trafficking venture through a general failure to adequately educate and train staff, adopt policies, and implement protocols and procedures that reduce or eliminate sex trafficking on their properties.  *See A.B. v.*

---

[3]     Plaintiff also alleges that it was the Super8® and Days Inn® hotels that rented rooms to A.D.'s trafficker.  Plaintiff's Complaint is unclear and attributes the rental of rooms to both Wyndham and the Super8® and Days Inn® hotels.  However, Plaintiff's Complaint is sufficiently intelligible to state a plausible right to relief.  Drawing all inferences in favor of Plaintiff, the Court assumes that A.D. is alleging that both Wyndham and the Super8® and Days Inn® hotels were involved in the process of leasing rooms to A.D.'s trafficker.

*Marriott Int'l, Inc.*, -- F. Supp. 3d --, 2020 WL 1939678, at *8 (E.D. Pa. 2020) (disagreeing with a plaintiff "to the extent she seeks [the court] to find Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties").  The civil remedy of the TVPRA allows a victim to hold civilly liable a defendant that benefited from participation in a specific venture that it knew or should have known was engaged in sex trafficking.  Establishing "participation" requires showing that a defendant took part in the sex trafficking through an act that furthered or facilitated the specific sex trafficking venture.  Although the hospitality industry may well have a "responsibility to make sex trafficking difficult for the offenders" (Compl. at 9, ECF No. 1), the TVPRA does not contemplate the imposition of civil liability for a failure to do so.

Nevertheless, A.D. has adequately alleged that Wyndham participated in a sex trafficking venture by repeatedly renting rooms to A.D.'s sex trafficker.  This is sufficient at the pleadings stage to state a plausible right to relief.

### C.    Knew or Should Have Known

A.D. has insufficiently alleged that Wyndham should have known that it was renting rooms to a venture engaged in sex trafficking.  All of A.D.'s allegations pertain to the knowledge of the Super8® and Days Inn® hotels.

Regarding the Super8® Hampton hotel, A.D. asserts that: (1) her trafficker paid the employees of the Super8® Hampton hotel "to remain quiet regarding his operation there"; (2) her "trafficker always used his name to book the rooms and paid in cash"; (3) her trafficker "would rent a number of rooms for varying lengths of time and would frequently extend stays by individual nights"; (4) her "trafficker repeated this process multiple times at the Super8® Hampton"; (5) seven to fourteen men would enter and exit the hotel through the front entrance daily and many of the men were "repeat customers"; (6) "[t]he room was frequently left with numerous used condoms

scattered across various surfaces"; (7) hotel staff were not permitted to see A.D. except when she was entering and exiting the hotel; (8) when hotel staff did see her, "[s]he exhibited prominent and obvious injuries," including a broken nose and numerous lacerations to the face and lips, as well as "a sunken face, and [a] withdrawn demeanor"; and (9) her "trafficker was extremely physically violent, and there were numerous assaults that were loud enough for hotel staff and [passersby] to hear . . . ." *Id.* at 18.

A.D. makes similar allegations regarding the Days Inn® Hampton hotel.  She alleges that: (1) there was a high volume of foot traffic by non-paying guests to rooms rented by her trafficker; (2) her "trafficker paid in cash for numerous rooms booked in his name"; (3) "at the end of each day[,] abundant used condoms were scattered across the rooms"; (4) her trafficker injured her so badly on several occasions that "it was noticeable to the public"; and (5) "there was direct contact between her trafficker and hotel staff . . . ." *Id.* at 18–19.

A.D. further alleges that there was video surveillance at both hotels, and that there were "oral or written complaints" regarding activity that was suspected to be sex trafficking or prostitution. *Id.* at 19.  A.D. asserts that "it would have been impossible" for staff observing the activities being conducted at these hotels "not to notice the victimization of A.D."  *Id.*

These allegations are sufficient to allege that the Super8® and Days Inn® hotels should have known that A.D. was the victim of a sex trafficking venture operating on their premises. Using "reasonable care and diligence" (*Hoschar*, 739 F.3d at 175 (quotation omitted)), the hotels should have known that A.D. was being sex trafficked.  *M.A.*, 425 F. Supp. 3d at 966–68 (finding constructive knowledge where plaintiff alleged that trafficker often requested rooms near the exit; trash cans in the rooms contained "extraordinary number of used condoms"; rooms were paid for

in cash; trafficker refused housekeeping services; plaintiff was loudly beaten; trafficker escorted

her in and out; and multiple men would enter and leave the hotel room throughout the day).[4]

But, inexplicably, the Super8® and Days Inn® hotels are not named as defendants in this

action.  Only Wyndham is named as a defendant.  The Complaint alleges that Wyndham was

generally aware of sex trafficking occurring at these hotels.  General awareness is insufficient to

establish that Wyndham knew or should have known that it was participating in a sex trafficking

venture *by renting rooms to A.D.'s trafficker*.  The only allegation regarding Wyndham and A.D.'s

trafficking is that Wyndham should have known it was participating in a sex trafficking venture

"because A.D.'s trafficker frequented [its] hotels."  Compl. at 19, ECF No. 1.  This is insufficient

to put a hotel using "reasonable care and diligence" (*Hoschar*, 739 F.3d at 175 (quotation omitted))

on notice that it is participating in a sex trafficking venture.

A.D. has failed to plead that Wyndham knew or should have known it was participating in

sex trafficking.  Accordingly, the viability of A.D.'s claim turns on whether Wyndham can be held

liable for the alleged actions and alleged knowledge of the Super8® and Days Inn® hotels.

### D.     Agency Liability

A.D. asserts numerous theories of liability against Wyndham for the actions and knowledge

of the Super8® and Days Inn® hotels.  Broadly, A.D. argues (1) Wyndham and the Super8® and

Days Inn® hotels have an agency relationship, (2) they also have an apparent agency relationship,

(3) Wyndham is the "alter ego" of the hotels, and (4) prematurely assuming that Wyndham may

---

[4]      Although the *M.A.* court cited the pre-*Twombly* 12(b)(6) standard, asserting that "the Court cannot dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," its findings on the constructive knowledge element of a § 1595 clearly rise above that bare minimum standard and rise to the level of plausibility required in the post-*Twombly* era.  *M.A.*, 425 F. Supp. 3d at 926, 966–68.

argue that the Super8® and Days Inn® franchises are independent contractors, Wyndham should be held directly liable under the peculiar risk exception to the general rule denying employer liability for the torts of independent contractors.  Resp. in Opp'n at 15–22, ECF No. 26.

A civil liability claim under § 1595 is essentially a tort action.  *See Meyer v. Holley*, 537 U.S. 280, 828 (2003).  "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules."  *Id.* (citations omitted).  The Court acknowledges that a § 1595 claim can be brought under an agency or vicarious liability theory, and potentially under a direct liability theory under the peculiar risk exception.[5]  The parties have inadequately briefed the question of whether A.D. has sufficiently alleged any of these theories.

The parties have assumed—without explanation—that the Court should look to state law in deciding whether A.D. has sufficiently pleaded agency liability or a peculiar risk exception against Wyndham.  *See* Mem. in Supp. at 10–11, ECF No. 15; Resp. in Opp'n at 15–22, ECF No.

---

[5]     The Court dismisses Plaintiff's assertions of "alter ego liability."  Plaintiff has failed to plead alter ego liability.  Plaintiff cites a seven-factor test and states that the Court should consider these factors in deciding whether Wyndham and the Days Inn® and Super8® hotels operated as a single corporate entity.  Resp. in Opp'n at 21–22, ECF No. 26 (quoting *Blair v. Infineon Technologies AG*, 720 F. Supp. 2d 462, 470 (D. Del. 2010)).  Under this test, courts should consider: "(1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) whether the corporation is merely a façade."  *Id.*  A.D. has not pleaded any of these factors.  A.D. has alleged that Wyndham hosts online bookings, requires Days Inn® and Super8® hotels to use Wyndham's customer rewards program, sets employee wages, makes employment decisions, advertises for employees, shares profits, standardizes training, builds the facilities, has rules of operation, conducts inspections, sets pricing, and "deprive[s] Days Inn® and Super8® branded hotels of independence in business operations."  Compl. at 12–13, ECF No. 1.  None of these allegations relates to the seven-factor test or asserts that Days Inn® and Super8® hotels were a single corporate entity.  Plaintiff has insufficiently alleged an alter ego theory of liability.

26; Reply at 11–13, ECF No. 30.  "Other courts with similar complaints seem to have [also] as-sumed it is a question of state law."  *J.C. v. Choice Hotels Int'l, Inc.*, No. 20cv155, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) (citations omitted).

"But the TVPRA is silent on the issue of indirect liability, which suggests that the *federal common law of agency should apply*."  *Id.* at *1 (emphasis added) (citing *Meyer*, 537 U.S. at 287–91 (2003)); *see also Krakauer v. Dish Network, LLC*, 925 F.3d 643, 659 (4th Cir. 2019) ("[W]e may . . . assume that federal statutes are written with familiar common law agency principles in mind.").  "This practice reflects the fact that federal statutes are generally intended to have uniform nationwide application."  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989).

The Parties are **ORDERED** to file supplemental briefing advising the Court: (1) whether they agree that federal common law should apply; (2) if they disagree, why Virginia common law should apply; and (3) assuming that federal common law applies, (a) whether the franchisor-fran-chisee relationship described in the Complaint[6] is sufficient to establish an agency relationship at

---

[6]     The Complaint alleges:

> Wyndham was in an agency relationship with Days Inn® and Super8® hotels of-fering public lodging services.  This agency relationship was created through De-fendant Wyndham's exercise of an ongoing and systemic right of control over Days Inn® and Super8® hotels by Wyndham's operations, including the means and methods of how Days Inn® and Super8® branded hotels conducted daily business through one or more of the following actions: (i) hosting online bookings on De-fendant Wyndham's domain; (ii) requiring Days Inn® and Super8® branded hotels to use Wyndham's customer rewards program; (iii) setting employee wages; (iv) making employment decisions; (v) advertisement for employment; (vi) sharing profits; (vii) standardized training methods for employees; (viii) building and main-taining the facility in a manner specified by the owner; (ix) standardized or strict rules of operation; (x) regular inspection of the facility and operation by owner; (xi) fixing prices; or (xii) other actions that deprive Days Inn® and Super8® branded hotels of independence in business operations.

Compl. at 12–13, ECF No. 1.

the pleadings stage, or (b) if the Days Inn® and Super8® hotels are independent contractors, whether A.D. has adequately alleged direct liability under the peculiar risk exception under the federal common law.[7] A.D. shall file her brief no later than August 5, 2020. Wyndham shall respond no later than August 12, 2020. The parties shall limit their briefs to no more than fifteen pages and shall address these three questions only.

## IV. CONCLUSION

For the foregoing reasons, a ruling on Wyndham's Motion to Dismiss (ECF No. 14) is **DEFERRED**. The Parties are **ORDERED** to submit supplemental briefing consistent with the Court's directives provided herein. The Clerk is **REQUESTED** to forward a copy of this Order to counsel of record for all parties.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

July 22, 2020
Norfolk, Virginia

---

[7] A.D. relies on *Wilson v. Good Humor Corp.*, 757 F.2d 1293 (1985) to argue that Wyndham can be held directly liable under the "peculiar risk" exception to the general rule against employer liability for the torts of independent contractors. Resp. in Opp'n at 16–18, ECF No. 26. But the *Wilson* court relied upon District of Columbia law in finding that the peculiar risk exception applied to Good Humor. *Wilson*, 757 F.2d at 1303–04. And the court emphasized that it was relying on *local law* to find a broader and circumstance specific peculiar risk exception and that "*local courts* would permit a jury to find Good Humor liable in this case . . . ." *Id.* (emphasis added). As explained above, the Court does not look to state or local law in interpreting third party liability under this federal statute. *See supra* at III.D. The parties are directed to brief whether A.D. has pleaded direct liability under a peculiar risk exception under the federal common law.

14