UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

A.D.,

        Plaintiff,

    v.

WYNDHAM HOTELS AND RESORTS, INC.,

        Defendant.

Civil No. 4:19cv120

## ORDER

Pending before the Court is a Motion to Dismiss brought by Defendant Wyndham Hotels and Resorts, Inc. ECF No. 14. For the following reasons, Defendant's Motion to Dismiss (ECF No. 14) is **DENIED**.

**I.    BACKGROUND**

A.D. brings her Complaint against Wyndham Hotels and Resorts, Inc. ("Wyndham"). Compl., ECF No. 1. A.D. alleges that she was sex trafficked at Wyndham brand hotels—specifically, the Super8® Hampton Hotel located at 1330 Thomas Street, Hampton, Virginia 23669, and the Days Inn® Hotel located at 1918 Coliseum Drive, Hampton, Virginia 23666. *Id.* at 18. She asserts a claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). *Id.* at 21–22.

Wyndham filed a Motion to Dismiss A.D.'s Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Mot. to Dismiss, ECF No. 14.

1

Wyndham argues that A.D. failed to make well-pleaded allegations sufficient to support any of the elements of a claim under § 1595(a).  Mem. in Supp. at 4, ECF No. 15.

The Court issued an Order deferring a ruling on Defendant's Motion to Dismiss and ordering supplemental briefing.  *See* Order, ECF No. 39.  The Court ruled that under 18 U.S.C. § 1595(a) "[t]he requirement for liability . . . on a 'beneficiary' theory can be stated as follows: (1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of [§ 1591]."  *Id.* at 4.

The Court found that A.D. adequately alleged the first and second elements.  *Id.* at 7–9.  Specifically, the Court found that A.D. had alleged a knowing benefit on the part of Defendant by stating that "Wyndham receives a percentage of the gross room revenue generated by the operations of Super8® and Days Inn®, including a percentage of the revenue generated from the rate charged for the rooms in which Plaintiff was sex trafficked."  *Id.* at 7.  Defendant "knowingly received this benefit" and "although the benefit was first received by the Super8® and Days Inn® hotels before being conveyed to Wyndham[,] [n]othing in the statute implies that the benefit must be paid directly from the sex trafficker to [the] defendant."  *Id.*

Regarding the participation element, the Court rejected A.D.'s assertion that "hotels participate in a sex trafficking venture through a general failure to adequately educate and train staff, adopt policies, and implement protocols and procedures that reduce or eliminate sex trafficking on their properties."  *Id.* at 8.

2

> Establishing "participation" requires showing that a defendant took part in the sex trafficking through an act that furthered or facilitated the specific sex trafficking venture. Although the hospitality industry may well have a "responsibility to make sex trafficking difficult for the offenders" (Compl. at 9, ECF No. 1), the TVPRA does not contemplate the imposition of civil liability for a failure to do so.

*Id.* at 9.

The Court found that A.D. had sufficiently alleged Wyndham's participation in the sex trafficking venture by alleging "that Wyndham 'leased rooms to A.D.'s trafficker . . . .'" *Id.* at 8 (quoting Compl. at 19, ECF No. 1) (alterations omitted). "By allegedly repeatedly renting rooms to A.D.'s trafficker, Wyndham took part in, furthered, and facilitated the sex trafficking venture, even if Wyndham did not rent rooms to the trafficker with that intent." *Id.* Although A.D. also alleged that the Super8® and Days Inn® played a role in the rental of rooms to A.D.'s trafficker, "[d]rawing all inferences in favor of Plaintiff, the Court assumes that A.D. is alleging that *both* Wyndham and the Super8® and Days Inn® hotels were involved in the process of leasing rooms to A.D.'s trafficker." *Id.* at 8 n.3 (emphasis added).

Notwithstanding the finding that A.D. had adequately alleged the first two elements of a § 1595(a) beneficiary claim against Wyndham, the Court found that A.D. had inadequately alleged the third element. A.D. insufficiently alleged that "Wyndham should have known that it was renting rooms to a venture engaged in sex trafficking" because "[a]ll of A.D.'s allegations pertain to the knowledge of Super8® and Days Inn® hotels." *Id.* at 9. Accordingly, the Court ruled that "the viability of A.D.'s claim turns on whether Wyndham can be held liable for the alleged actions and alleged knowledge of the Super8® and Days Inn® hotels." *Id.* at 11.

3

This Court deferred a final ruling on the Motion to Dismiss and ordered supplemental briefing from both parties limited to the question of third-party liability. In their initial briefing on the Motion to Dismiss, both parties assumed that third-party liability would be decided under Virginia law. *Id.* at 12–13. But the Court concluded that federal common law should apply to this federal statute. *Id.* at 13.

The Parties were ordered to file supplemental briefing on the issue of third-party liability. *Id.* at 13–14. The Parties have submitted their supplemental briefing and the Motion to Dismiss is now ripe for a final decision.

The Court's previous findings from its July 22, 2020 Order are incorporated herein. The Court now addresses only whether A.D. adequately alleges a right to relief under a third-party theory of liability.

## II. LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Rule 12(b)(6) permits a defendant to seek dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [the] defendant" is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Facts that are 'merely consistent with' liability do not establish a plausible claim to relief." *United States ex rel. Nathan v. Takeda Pharm.*

*N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013). The "'factual allegations must be enough to raise [the] right to relief above the speculative level,' thereby 'nudging [the plaintiff's] claims across the line from conceivable to plausible.'" *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).

At this stage, as noted above, "(1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader." 5B Charles A. Wright Et Al., Federal Practice & Procedure § 1357 & n.11 (3d ed.) (collecting cases); *accord Wag More Dogs, Ltd. Liability Corp. v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). But courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A threadbare recitation of the "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); see also *Iqbal*, 556 U.S. at 663 (noting that "mere conclusory statements" are insufficient).

### III. ANALYSIS

As noted previously, A.D. insufficiently alleged that Wyndham should have known that it was renting rooms to a venture engaged in sex trafficking. All of A.D.'s allegations pertain to the knowledge of the Super8® and Days Inn®. Order at 9–10,

5

ECF No. 39. The Complaint alleges "that Wyndham was generally aware of sex trafficking occurring at their hotels" and that "A.D's trafficker frequented [its] hotels." *Id.* at 11. The Court found this "insufficient to put a hotel using reasonable care and diligence on notice that it is participating in a sex trafficking venture." *Id.* at 12 (quotation omitted). Accordingly, Plaintiff has failed to plausibly allege Wyndham's direct liability for violating § 1595(a).

But the Court found that A.D. allegations are "sufficient to allege that the Super8® and Days Inn® should have known that A.D. was the victim of a sex trafficking venture operating on their premises." *Id.* at 11. "Accordingly, the viability of A.D.'s claim [against Wyndham] turns on whether Wyndham can be held liable for the alleged actions and alleged knowledge of the Super8® and Days Inn® hotels." *Id.* at 12.

A § 1595 claim can be brought under a third-party theory of liability. A civil liability claim under § 1595 is essentially a tort action. *See Meyer v. Holley*, 537 U.S. 280, 828 (2003). "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Id.* (citations omitted).

"[T]he TVPRA is silent on the issue of indirect liability, which suggests that the federal common law of agency should apply."[1] *J.C. v. Choice Hotels Int'l*, No. 20-

---

[1] The Court rejects Wyndham's contention that the TVPRA is not silent on indirect liability. Wyndham argues that the TVPRA provides for indirect liability by creating beneficiary liability. Def.'s Supp. Br. At 2–3, ECF No. 43. But beneficiary liability is not third-party liability. Rather, it is another form of direct liability. Those who knowingly benefit from participating in a venture that they knew or should have

cv-00155-WHO, 2020 WL 3035794, at *1 (citing *Meyer*, 537 U.S. at 287–91); *see also Krakauer v. Dish Network, LLC*, 925 F.3d 643, 659 (4th Cir. 2019) ("[W]e may . . . assume that federal statutes are written with familiar common law agency principles in mind."). "This practice reflects the fact that federal statutes are generally intended to have uniform nationwide application." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989) (quotation omitted).

Federal courts look to the Restatement of Agency to determine whether agency liability exists. *Hodgin v. UTC Fire & Sec. Am. Corp.*, 885 F.3d 243, 252 (4th Cir. 2018). Under the Restatement of Agency, "an agency relationship exists when a principal 'manifests assent' to an agent 'that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Krakauer*, 925 F.3d at 659–60 (quoting Restatement (Third) of Agency, § 1.01). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals vicariously liable for acts of their agents in the scope of their authority.'" *Id.* at 660 (quoting *Meyer*, 537 U.S. at 285–86).

"Generally, the existence and scope of agency relationships are factual matters, and are therefore often appropriately left to the jury." *Id.* (quotation omitted). At the motion to dismiss stage, the Court determines not whether an agency relationship

---

known was sex trafficking are themselves directly liability for the harms caused to the victims. Whether a third party—such as an employer or parent company—can be held indirectly liability for the beneficiary's tortious conduct is a separate question, which the TVPRA does not address.

7

exists, but whether A.D. has alleged facts in the Complaint that if true would make a jury finding of an agency relationship plausible.

At this early stage in litigation A.D. has plausibly alleged an agency relationship. Most significantly, A.D. has alleged that Wyndham exerted a "systemic right of control" over Days Inn® and Super8®. These allegations go beyond mere allegations that Days Inn® and Super8® hotels are required to comply with Wyndham brand standards in accordance with their franchising agreement.

> Specifically, A.D. alleges:
>
> Wyndham was in an agency relationship with Days Inn® and Super8® hotels offering public lodging services. This agency relationship was created through Defendant Wyndham's exercise of an ongoing and systemic right of control over Days Inn® and Super8® hotels by Wyndham's operations, including the means and methods of how Days Inn® and Super8® branded hotels conducted daily business through one or more of the following actions: (i) hosting online bookings on Defendant Wyndham's domain; (ii) requiring Days Inn® and Super8® branded hotels to use Wyndham's customer rewards program; (iii) setting employee wages; (iv) making employment decisions; (v) advertisement for employment; (vi) sharing profits; (vii) standardized training methods for employees; (viii) building and maintaining the facility in a manner specified by the owner; (ix) standardized or strict rules of operation; (x) regular inspection of the facility and operation by owner; (xi) fixing prices; or (xii) other actions that deprive Days Inn® and Super8® branded hotels of independence in business operations.

Compl. at 12–13, ECF No. 1.

These allegations go beyond a franchisor instruction that "all customers shall be treated fairly, honestly, and courteously," or mere allegations that a franchisor has the power to debrand franchisees for failure to comply with brand standards. *Contra Arguello v. Conoco, Inc.*, 207 F.3d 803, 807 (5th Cir. 2000). A.D. alleges more: (1) that Wyndham controls who gets hired, when they are hired, how much they are paid, and

how they are trained; (2) Wyndham requires branded hotels to utilize Wyndham booking and rewards systems and fixes prices; and (3) Wyndham provides rules of operation, requires premises to be built and maintained according to certain standards, and inspects the premises to ensure compliance.  Compl. at 12–13, ECF No. 1 Contra *id.* (noting a lack of allegations that the franchisor had policies regarding franchisee employees or a role in making personnel decisions).

Although any of these allegations standing alone might be insufficient to establish an agency relationship, after considering them together, the Court finds that A.D. has alleged that Wyndham had a high degree of control over the daily operations of Days Inn® and Super8® hotels.  In short, A.D. has alleged more than an ordinary franchise relationship.[2]

Wyndham argues that even if A.D. has plausibly alleged an agency relationship, her Complaint should be dismissed because the Days Inn® and Super8® were acting outside the scope of their authority.  Under the Restatement of Agency, an agent has authority only "to take action designated or implied in the principal's manifestations to the agent and acts necessary or incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives . . . ."  Restatement (Third) of Agency, § 2.02(1).  "The determination of reasonableness is [ultimately] a question for the trier of fact . . . ."  *Id.* at § 2.02 cmt. c.

---

[2] Determination based on the evidence of whether something beyond the ordinary franchise relationship existed is reserved for a later stage of litigation.

9

But generally, a reasonable agent should understand that the principal does not intend the agent to commit crimes and torts. *Id.* at § 2.02 cmt. h.

It is not determinable at this early stage whether the Days Inn® and Super8® were acting outside the scope of their authority. "While early [judicial] decisions absolved [principals] of liability for the intentional torts of their [agents], the law now imposes liability where the [agent's] 'purpose, however misguided, is wholly or in part to further the master's business.'" *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 70, p. 505 (5th Ed. 1984)). Additionally, the agent's intent is considered. "[I]t is less likely that a willful tort will properly be held to be in the [scope of authority] and [it is accepted] that the liability of the [principal] for such torts will naturally be more limited." *Id.* (quoting F. Mechem, Outlines of the Law of Agency § 394, p. 266 (P. Mechem 4th ed. 1952)).

Here, A.D.'s allegations regarding the Days Inn® and Super8® include allegations of negligence. A.D. alleges that the Days Inn® and Super8® *should have known* that A.D. was being sex trafficked based on various indications and clues. If the Days Inn® and Super8® were merely negligent in renting rooms to A.D.'s trafficker—the primary purpose for which they have been allegedly engaged as agents for Wyndham—this may still be within the scope of authority given to Days Inn® and Super8®. Accordingly, this is an insufficient ground to dismiss A.D.'s Complaint at this early juncture.

Additionally, "[i]n limited circumstances, agency principles impose liability on [principals] even where [agents] commit torts outside the scope [of their authority]." *Burlington*, 524 U.S. at 758. One of these circumstances is where "the tort is attributable to the [principal's] own negligence."[3] *Id.* The Restatement (Third) of Agency provides that a principal may be liable for the torts of an agent "if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent." Restatement (Third) of Agency, § 7.05(1).

To state such a claim, a plaintiff must show that: (1) the actor committed a tort (here, a violation of § 1595(a)); (2) the plaintiff was injured as a result; (3) the principal owed the plaintiff a duty; (4) the defendant was negligent in its supervision or training of the actor; and (5) there is a causal connection between the defendant's negligence and the harm done to the plaintiff. *Id.* Plaintiff alleges sufficient facts in the Complaint to satisfy these requirements.

Plaintiff has adequately alleged that the Super8® and Days Inn® violated § 1595(a). As identified previously, the elements of a § 1595(a) claim on a beneficiary theory are: "(1) the person or entity must knowingly benefit[], financially or by

---

[3] For example, in the context of a Title VII claim, "although a supervisor's sexual harassment [of an employee] is outside the scope of employment because the conduct was for personal motives, an employer can be liable, nonetheless, where its own negligence is a cause of the harassment. An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it." *Id.* at 759; *see also Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 273–74 & n.5 (2d Cir. 2016) (finding employer liability for employee violation of Title VII when the employer, "through its own negligence," enabled that violation and noting that the Restatement (Third) of Agency § 7.05 cmt. b. "holds [principals] responsible for harm caused by [agents] as a result of the [principal's] negligence").

11

receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in a violation of [§ 1591]." Order at 4, ECF No. 39 (citing *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2:19cv1195, 2020 WL 1244192, at *5 (S.D. Ohio March 16, 2020)).

"[T]he rental of a room constitutes a financial benefit" knowingly received "sufficient to meet this element of the § 1595(a) standard." *Id.* at 4–5 (citing *Doe S.W.*, 2020 WL 1244192, at *5). A.D. alleges that the Super8® and Days Inn® regularly rented rooms to her trafficker. Complaint at 18, ECF No. 1.

The participation element requires a showing that the defendant "somehow '[took] part' in the sex trafficking venture through some action that assists, furthers, or facilitates the sex trafficking." Order at 5, ECF No. 39. The participation need not be intentional, and the defendant need not have shared a common purpose with the sex trafficker. *Id.* at 6. "[A] plaintiff establishes participation in a venture for purposes of § 1595(a) when she alleges 'a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement.'" *Id.* (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)).

A.D. alleges that her sex trafficker "operated primarily out of" the Super8® and Days Inn® and "would rent a number of rooms for varying lengths of time and would frequently extend the stays by individual nights." Compl. at 18, ECF No. 1.

Therefore, Plaintiff has alleged a pattern of conduct sufficient to establish that Super8® and Days Inn® "participated" in the sex trafficking venture.

Regarding the "knew or should have known" requirement, the Court reiterates that Plaintiff has sufficiently alleged this element as to the knowledge of Super8® and Days Inn®. Order at 10–11, ECF No. 39. Regarding the Super8® Hampton, A.D. alleges that: (1) her trafficker paid the employees of the Super8® Hampton "to remain quiet regarding his operation there"; (2) her "trafficker always used his name to book the rooms and paid in cash"; (3) her trafficker "would rent a number of rooms for varying lengths of time and would frequently extend stays by individual nights"; (4) her "trafficker repeated this process multiple times at the Super8® Hampton"; (5) seven to fourteen men would enter and exit the hotel through the front entrance daily and many of the men were "repeat customers"; (6) "[t]he room was frequently left with numerous used condoms scattered across various surfaces"; (7) hotel staff were not permitted to see A.D. except when she was entering and exiting the hotel; (8) when hotel staff did see her, "[s]he exhibited prominent and obvious injuries," including a broken nose and numerous lacerations to the face and lips, as well as "a sunken face, and [a] withdrawn demeanor"; and (9) her "trafficker was extremely physically violent, and there were numerous assaults that were loud enough for hotel staff and [passersby] to hear . . . ." Compl. at 18, ECF No. 1.

As for the Days Inn® Hampton, A.D. alleges that: (1) there was a high volume of foot traffic by non-paying guests to rooms rented by her trafficker; (2) her "trafficker paid in cash for numerous rooms booked in his name"; (3) "at the end of each

13

day[,] abundant used condoms were scattered across the rooms"; (4) her trafficker injured her so badly on several occasions that "it was noticeable to the public"; and (5) "there was direct contact between her trafficker and hotel staff . . . ." *Id.* at 18–19.

Additionally, A.D. alleges that there was video surveillance at both hotels, and that there were "oral or written complaints" regarding activity that was suspected to be sex trafficking or prostitution. *Id.* at 19. A.D. asserts that if persons were alert to the activities being conducted at the Super8® and Days Inn®, "it would have been impossible for them not to notice the victimization of A.D." *Id.* These allegations are sufficient to allege that the Super8® and Days Inn® should have known that A.D. was the victim of a sex trafficking venture that was operating on their premises. Order at 10–11, ECF No. 39.

As a result of Super8®'s and Days Inn®'s violations of § 1595(a), Plaintiff was injured. Plaintiff alleges that as a result of her sex trafficking, she endured extreme physical violence. Compl. at 18, ECF No. 1. She was forced to sexually service strangers (an average of seven and up to fourteen a night) in exchange for money, and to provide the money to her sex traffickers. *Id.* at 18–19. She also alleges that she has suffered emotional, psychological, and financial harm. *Id.* at 21.

A principal owes a plaintiff a duty where the principal is in a special relationship with the plaintiff. Restatement (Third) of Agency, § 7.05 cmt. b. "An actor in a special relationship with another owes a duty of reasonable care to third persons with

14

regard to risks posed by the other that arise out of the relationship." *Id.* "Such relationships include . . . an innkeeper with its guests." *Id.* at § 7.05 cmt. e.

A.D. alleges that she was a guest at the Super8® Hampton and Days Inn® Hampton and that she was sex trafficked while she was residing in those hotels. Compl. at 18–19, ECF No. 1. She alleges that Wyndham—as the parent brand of Super8® and Days Inn®—owns, supervises, and operates these hotels. *Id.* at 11. Accepting the facts alleged in the Complaint as true, Wyndham was in a special relationship with Plaintiff.

As for negligence, a principal's "conduct is negligent if [it] does not exercise reasonable care under all of the circumstances." Restatement (Third) of Agency at § 7.05 cmt. b. "The most important circumstances are the foreseeable likelihood that conduct will result in harm, the foreseeable severity of that harm, and the burdens imposed by precautions to eliminate or reduce the possibility of harm." *Id.* at § 7.05 cmt. b. "A foreseeable risk of harm may be created when one person conducts an activity through another person." *Id.* "Some tasks"—such as operating a hotel and renting hotel rooms—"require performance in settings that pose a foreseeable risk of criminal or other intentional misconduct against third parties . . . ." *Id.*

"A principal's duty to exercise reasonable care extends to the principal's supervision of the actors who carry out activities on its behalf." *Id.* at cmt. d. The type and degree of supervision required of the principal is determined by "the risk posed to the third parties and the burdens imposed by precautions that the principal may take in reference to the risk." *Id.*

15

Plaintiff has adequately alleged that Defendant was negligent under the circumstances. She alleges that Wyndham had knowledge of "extensive prostitution and sex trafficking that occurs at its hotels." Compl. at 11, ECF No. 1. Plaintiff asserts that Wyndham has been aware of sex trafficking occurring at its hotels "[f]or years," and lists eighteen examples of known instances of sex trafficking at Wyndham brand hotels. *Id.* at 14–15. A.D. has sufficiently alleged that the risk of harm was foreseeable to Wyndham.

She has also alleged that Wyndham could have taken various actions to mitigate this risk, including (1) distributing information to assist employees in identifying human trafficking; (2) providing a process for escalating human trafficking concerns within the organization; (3) mandating that managers, employees, and franchise owners attend training related to human trafficking; (4) providing orientation on human rights and corporate responsibility for new hires; and (5) hosting seminars, webinars, conferences, and online portals to provide training and education on human trafficking. *Id.* at 11–13. These burdens, although not *de minimis*, are substantially outweighed by the degree of harm caused by sex trafficking. A.D. has sufficiently alleged that Wyndham was negligent in its training and supervision of Super8® and Days Inn®.

Moreover, "some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harms suffered by the third party" is required. Restatement (Third) of Agency, § 7.05 cmt. c. The causal connection is clear in this case. A.D. alleges that Wyndham was

16

negligent in its supervision of the operation of the Super8® and Days Inn® by failing to adequately implement protocols and procedures to reduce the foreseeable risk of sex trafficking. The Super8® and Days Inn® were renting rooms to a sex trafficker and violating § 1595(a). A.D. was harmed as a result.

Each element of this kind of third-party liability has been adequately alleged by Plaintiff. As reviewed above, Plaintiff has also adequately alleged agency liability at this early stage. Thus, Plaintiff has stated a plausible right to relief under a third-party theory of liability. Accordingly, the Motion to Dismiss is denied.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 14) is **DENIED**. The Parties shall contact the Courtroom Deputy after conferring to set a Rule 16(b) scheduling conference for discovery, dispositive motions and trial.

The Clerk is **REQUESTED** to forward a copy of this Order to counsel of record for all parties.

**IT IS SO ORDERED.**

                                                           /s/
                                    Arenda L. Wright Allen
                                United States District Judge

September 21, 2020
Norfolk, Virginia